UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MICHAEL SCHNOBLEN,

       Plaintiff,

                                Case No.

vs.                           Hon.


DTE ENERGY COMPANY,
DTE ENERGY CORPORATE SERVICES, LLC,

       Defendant.

---

Greg A. Jones (P75318)
MORGAN & JONES
Attorneys for Plaintiff
30500 Northwestern Hwy, Ste 425
Farmington Hills, MI 48334
P: 248-865-0001
F: 248-865-0002
gjones@work-lawyers.com
rhanlon@work-lawyers.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, MICHAEL SCHNOBLEN, by and through his attorneys, MORGAN & JONES, and for his Complaint in this matter, hereby submits the following:

1.     Plaintiff was a 19-year employee with an exemplary record of employment with Defendant DTE. After taking a job-protected leave and

exercising his rights under the FMLA, DTE supervisors began to target him, unreasonably critiquing his performance as a pretext for discrimination, interfering with his rights, and ultimately unceremoniously terminating his employment.

2.     As a result, this claim is for an action for discrimination on the basis of disability in violation of the Americans with Disabilities Act, the Michigan Persons with Disabilities Civil Rights Act, and violations of the Family Medical and Leave Act of 1993.

## JURISDICTION AND VENUE

3.     Plaintiff, MICHAEL SCHNOBLEN (hereinafter, "SCHNOBLEN"), is an individual residing in the City of Troy, County of Oakland, State of Michigan.

4.     Defendant, DTE ENERGY COMPANY (hereinafter, "DTE ENERGY") is a corporation organized under the laws of the State of Michigan, which conducts regular and systematic business throughout the state of Michigan, including in the County of Wayne.

5.     Defendant, DTE ENERGY CORPORATE SERVICES, LLC, (hereinafter, "DTE CORPORATE," and Defendants referred to collectively as "DTE"), is a domestic limited liability company, organized under the laws of

the State of Michigan, which conducts regular and systematic business throughout the State of Michigan, including the county of Wayne.

6.     SCHNOBLEN is an eligible employee as defined by the FMLA.

7.     DTE is an employer as defined by the FMLA.

8.     This court has jurisdiction pursuant to 28 U.S.C. § 1331.

9.     This Honorable Court has jurisdiction over the pendent State law claims pursuant to 28 U.S.C. § 1367.

10.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) related to the claims set forth herein on or about February 6, 2024. (**Exhibit A**)

11.     On or about February 13, 2024, the EEOC issued a Notice of Right to sue related to SCHNOBLEN's charge. **(Exhibit B)**

12.     Plaintiff has filed the instant complaint within 90 days of receipt of the Notice of Right to Sue issued by the EEOC.

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred within this Judicial District.

## BACKGROUND FACTS

14.     DTE is a Detroit-based energy company which provides electric and natural gas services throughout the State of Michigan.

15.   SCHNOBLEN began working for DTE in or around January of 2005.

16.   SCHNOBLEN's last position with DTE was as a Strategy and Planning Specialist.

17.   At all times relevant, SCHNOBLEN performed the responsibilities of his position with DTE in a manner that demonstrated that he was well-qualified for the position and was able to perform the essential functions of the job.

18.   At all times relevant, SCHNOBLEN suffered from an impairment which affected one or more major life activities.

19.   As a result of his disability, SCHNOBLEN required an accommodation to not be assigned storm duty.

20.   In addition to their regular, full-time activities, DTE employees would be assigned storm duty on an ad-hoc basis, wherein they would be assigned tasks related to power outages on an emergent basis.

21.   Storm duty tasks frequently involved high-stress activities and working during night shifts.

22.   SCHNOBLEN's physicians advised that his health would be adversely affected by the conditions imposed by storm duty.

23. Accordingly, SCHNOBLEN requested the reasonable accommodation to not be assigned to storm duty.

24. SCHNOBLEN specifically provided DTE with written notice of his need for the accommodation.

25. DTE agreed to provide SCHNOBLEN with the requested accommodation.

26. In or around March 2023, SCHNOBLEN developed a serious health condition, as that term is defined by the FMLA, requiring that he take leave from his position with DTE.

27. SCHNOBLEN accordingly provided notice to DTE of his need for leave.

28. SCHNOBLEN took leave from his position with DTE from March 2023 until July 12, 2023 under the FMLA.

29. After returning to work, SCHNOBLEN's supervisors began to target him with increased criticism.

30. Specifically, SCHNOBLEN's managers would inform him that there were numerous defects with his work, but would not provide him with the specific details which would allow him to rebut the criticism or address the same in order to improve.

31.    One such unfair criticism involved chastising SCHNOBLEN for failing to join a separate discussion while he was attending another meeting that DTE scheduled for him and required him to attend.

32.    Additionally, during a meeting involving multiple other employees, SCHNOBLEN's manager asked him about his storm duty role in front of those employees.

33.    Upon information and belief, SCHNOBLEN's manager made this request with the intention of embarrassing him and exposing the accommodation made necessary by virtue of his disability.

34.    Further, after returning from leave, SCHNOBLEN requested that he be provided with intermittent leave under the FMLA, so that he could attend necessary medical appointments.

35.    Upon submitting this request, SCHNOBLEN's manager immediately approached him and asked him what was going on with his request, and demanded to know what would happen with his work during periods of leave.

36.    In or around October 2023, SCHNOBLEN reported the increased hostility and unfair criticism that he had been receiving to DTE's human resources department.

37. On or about November 8, 2023, SCHNOBLEN reiterated his concerns to human resources regarding being discriminated and retaliated against.

38. SCHNOBLEN continued to report his concerns to Human Resources, and filed a formal ethics complaint.

39. DTE failed to address SCHNOBLEN's concerns in any meaningful way.

40. Instead, DTE continued to cite vague performance deficiencies as a pretext for discrimination.

41. On or about December 20, 2023, DTE terminated SCHNOBLEN's 19-plus year employment.

42. DTE's termination of SCHNOBLEN's employment was motivated by a discriminatory animus on the basis of his disability, in retaliation for having exercised his rights under the FMLA, and in retaliation for having reported discrimination on the basis of his disability.

## COUNT I
## VIOLATION OF THE FMLA

43. SCHNOBLEN repeats and reincorporates each and every paragraph of this Complaint as though more fully set forth herein.

44. At all relevant times, SCHNOBLEN was an employee with at least one-year of service with DTE, and at least 1,250 hours worked during

the 12 months prior to taking leave, and was otherwise an eligible employee

pursuant to the FMLA, 29 U.S.C. §2611(2).

45.    At all relevant times, DTE employed more than fifty (50)

employees and was a covered employer pursuant to the FMLA, 29 U.S.C.

§2611(4).

46.    At all relevant times, SCHNOBLEN suffered from a "serious

health condition" as defined by the FMLA, 29 U.S.C. §2611(11).

47.    DTE had a duty pursuant to the FMLA to provide SCHNOBLEN

with up to twelve job-protected weeks of leave due to a serious health

condition that rendered SCHNOBLEN incapable (even temporarily or

intermittently) of performing the function of his job.

48.    The FMLA makes it unlawful for any employer to interfere with,

restrain, or deny the exercise of or the attempt to exercise any right provided

under the FMLA to an eligible employee. 29 U.S.C § 2615.

49.    Additionally, the FMLA makes it unlawful for any employer to

discriminate or retaliate against an employee for having exercised or

attempted to exercise any right provided under the FMLA.  29 U.S.C. § 2615.

50.    DTE violated SCHNOBLEN's rights under the FMLA by:

    a. Failing to designate SCHNOBLEN's medical leave as falling

       under the protections of the FMLA.

8

b. Interfering with SCHNOBLEN's exercise of his rights under the FMLA;

c. Retaliating against SCHNOBLEN for exercising his rights under the FMLA;

d. Discharging and/or otherwise discriminating against SCHNOBLEN because of having exercised rights under the FMLA.

51. As a direct and proximate result of DTE's violation of the FMLA, SCHNOBLEN has suffered damages, including but not limited to, past and future income and employee benefits, physical pain and suffering, mental anxiety, emotional distress, humiliation, outrage and loss of professional and personal reputation.

### COUNT II
### VIOLATION OF THE ADA
### Disability Discrimination

52. SCHNOBLEN incorporates by reference the preceding paragraphs of this complaint as though more fully set forth herein.

53. At all times material hereto, SCHNOBLEN was an employee and DTE was his employer, covered by and within the meaning of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12111(5)(a).

54. At all times material hereto, SCHNOBLEN was and is an individual with a disability within the meaning of §3(2) of the ADA, 42 U.S.C. §12102(2).

55. SCHNOBLEN is a qualified individual with a disability as that term is defined in the ADA, 42 U.S.C. §12111(8).

56. SCHNOBLEN's conditions constitute an impairment that substantially limits one or more major life activities.

57. SCHNOBLEN has a record of physical or mental impairment that substantially limits one or more major life activities.

58. DTE was aware of SCHNOBLEN's medical conditions.

59. SCHNOBLEN's disability, and/or record of a disability, and/or perceived disability was a factor that made a difference in DTE's decision to adversely affect SCHNOBLEN's employment and to terminate his employment.

60. DTE was predisposed to discriminate on the basis of disability and/or record of a disability and/or perceived disability and acted in accordance with that predisposition.

61. DTE's actions were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of SCHNOBLEN.

62.     As a direct and proximate result of DTE's violation of SCHNOBLEN's rights as alleged, SCHNOBLEN's terms, conditions, and privileges of employment were adversely affected.

63.     As a direct and proximate result of DTE's wrongful acts and omissions, SCHNOBLEN has sustained injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation and loss of the ordinary pleasures of every day life, including the right to pursue the gainful employment of his choice.

**COUNT III**
**VIOLATION OF THE ADA**
**Retaliation**

64.     SCHNOBLEN incorporates by reference the preceding paragraphs of this complaint as though more fully set forth herein.

65.     At all times material hereto, SCHNOBLEN was an employee and DTE was his employer, covered by and within the meaning of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12111(5)(a).

66.     At all times material hereto, SCHNOBLEN was and is an individual with a disability within the meaning of §3(2) of the ADA, 42 U.S.C. §12102(2).

67.    As set forth more fully herein, SCHNOBLEN engaged in activity protected by the ADA by opposing discrimination on the basis of his disability.

68.    SCHNOBLEN's opposition to discrimination on the basis of his disability was a factor that made a difference in DTE's decision to adversely affect SCHNOBLEN's employment and to terminate his employment.

69.    DTE's actions were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of SCHNOBLEN.

70.    As a direct and proximate result of DTE's violation of SCHNOBLEN's rights as alleged, SCHNOBLEN's terms, conditions, and privileges of employment were adversely affected.

71.    As a direct and proximate result of DTE's wrongful acts and omissions, SCHNOBLEN has sustained injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation and loss of the ordinary pleasures of every day life, including the right to pursue the gainful employment of his choice.

## COUNT IV

## DISCRIMINATION ON THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### Disability Discrimination

72.   SCHNOBLEN incorporates by reference the preceding paragraphs of his complaint as though fully set forth herein.

73.   At all times material hereto, SCHNOBLEN was an employee and DTE was his employer covered by and within the meaning of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

74.   SCHNOBLEN's medical conditions constitute a disability, as that term is defined by and within the meaning of the PWDCRA.

75.   SCHNOBLEN'S disability affected his ability to engage in one or more major life activities.

76.   SCHNOBLEN was/is qualified for his position with DTE and other positions which he sought.

77.   SCHNOBLEN's disability did not affect his ability to perform the essential functions of his job with a reasonable accommodation.

78.   DTE was aware of SCHNOBLEN's medical conditions.

79.   DTE regarded SCHNOBLEN's medical conditions as a physical impairment that substantially limited one or more major life activities.

80.   SCHNOBLEN's disability, and/or record of a disability, and/or perceived disability were a factor that made a difference in DTE's decision

to adversely effect SCHNOBLEN's employment and to terminate SCHNOBLEN's employment.

81.    DTE's actions were intentional and willful, in deliberate disregard of and with reckless indifference to the rights and sensibilities of SCHNOBLEN.

82.    As a direct and proximate result of DTE's violation of SCHNOBLEN's rights as alleged, SCHNOBLEN's terms, conditions, and privileges of employment were adversely affected.

83.    As a direct and proximate result of DTE's wrongful acts and omissions, SCHNOBLEN has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of his choice.

## COUNT V
## DISCRIMINATION ON THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### Disability Discrimination

84.    SCHNOBLEN incorporates by reference the preceding paragraphs of his complaint as though fully set forth herein.

85.    At all times material hereto, SCHNOBLEN was an employee and DTE was his employer covered by and within the meaning of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA").

86.    As set forth more fully herein, SCHNOBLEN engaged in activity protected by the ADA by opposing discrimination on the basis of his disability.

87.    SCHNOBLEN's opposition to discrimination on the basis of his disability was a factor that made a difference in DTE's decision to adversely affect SCHNOBLEN's employment and to terminate his employment.

88.    As a direct and proximate result of DTE's violation of SCHNOBLEN's rights as alleged, SCHNOBLEN's terms, conditions, and privileges of employment were adversely affected.

89.    As a direct and proximate result of DTE's wrongful acts and omissions, SCHNOBLEN has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of career opportunities; loss of fringe and pension benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; loss of professional reputation; and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful employment of his choice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in his favor, against Defendant for compensatory damages in whatever amount he is found to be entitled; exemplary and punitive damages for whatever amount he is found to be entitled; lost wages and benefits, past and future, in whatever amount he is entitled; and for interest, costs, and attorney's fees.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE.**

Respectfully submitted,

MORGAN & JONES

_____
Greg Jones (P75318)
Attorneys for Plaintiff
30500 Northwestern Hwy, Suite 425
Farmington Hills, MI 48334
(248) 865-0001
Dated:  May 13, 2024        gjones@work-lawyers.com

16